**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES ROBINSON, : | |
| : | |
| Petitioner, : | Civil Action No. 10-2648 (RMB) |
| : | |
| v. : | **O P I N I O N** |
| : | |
| STATE OF NEW JERSEY, : | |
| : | |
| Respondent. : | |

**BUMB**, District Judge:

Petitioner James Robinson ("Petitioner") filed the instant Petition ("Petition"), seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a), and challenging a judgment of conviction in the Superior Court of New Jersey.  Petitioner was duly given notice, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  For the reasons expressed below, the Court will dismiss the Petition and will decline to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

**I.   STANDARD OF REVIEW**

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a
> writ of habeas corpus in behalf of a person in custody

> pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.),

2

cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[1] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law [as it is interpreted or] set forth in [the Supreme Court's, rather than in any state

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever; such determination is nonetheless subject to same degree of deference for the purposes of the court sitting in habeas review. See Harrington v. Richter, 2011 U.S. LEXIS 912 (U.S. Jan. 19, 2011).

3

court's or any circuit court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

In other words, under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively, which means that an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

**II. BACKGROUND**

    **A.    Petitioner's Challenges**

Here, Petitioner raised four Grounds, reading as follows:

Ground One:           NEW JERSEY CONSTITUTION, ARTICLE I,
                      PARAGRAPH 7, REQUIRES POLICE TO
                      EXECUTE THE WARRANT IN[ ]A
                      REASONABLE MANNER.
Supporting facts:     POLICE ARRIVED AT 6:30 am TO
                      EXECUTE A KNOCK AND ANNOUNCE
                      WARRANT.  THE TACTICAL TEAM OF 13
                      DID NOT PROVIDE SUFFICIENT TIME TO
                      ANSWER THE DOOR, APPROX. 20 to 30
                      SECONDS BEFORE FORCIBLY BREAKING
                      THE DOOR, AND DEPLOYING A
                      "FLASHBANG DEVICE" WITHOUT ANY
                      UNFORSEEN EXIGENT CIRCUMSTANCES
                      WHICH NULLIFIED THE LEGAL EFFICACY
                      OF A KNOCK AND ANNOUNCE WARRANT, IN
                      VIOLATION OF N.J. CONST. ART. I,
                      PAR. 7.

Ground Two:           DENIAL OF MOTION TO SUPPRESS
                      EVIDENCE.
Supporting facts:     ON JANUARY 16, 2004, POLICE
                      CONDUCTED A KNOCK AND ANNOUNCE
                      WARRANT WITH APPROXIMATELY 13
                      OFFICERS.  AFTER 20 OR 30 SECONDS
                      BROKE THE DOOR, DEPLOYED A FLASH
                      BANG DEVICE AND ENTERED.  THEY
                      SEIZED NARCOTICS, CASH, PAPER
                      LEDGER AND A SCALE.  ON JULY 5,
                      2005, A[ ]SUPPRESSION HEARING WAS
                      CONDUCTED TO SUPPRESS EVIDENCE FROM
                      THE SEARCH BASED ON THE USE OF
                      ENTRY, WHICH CONSTITUTED A
                      VIOLATION OF MATERIAL CONDITION AND
                      RENDERED THE SEARCH UNREASONABLE
                      AND UNCONSTITUTIONAL.

Ground Three:   UNREASONABLE SEARCH AND SEIZURE, UNITED
                STATES CONSTITUTIONAL AMENDMENT FOUR.
Supporting facts:     THE POLICE CONDUCTED A SEARCH
                      WARRANT ON PETITIONER['] APARTMENT,
                      WHICH THE ENTRY WAS UNREASONABLE
                      UNDER THE CIRCUMSTANCES PRESENTED
                      IN THE "AFFIDAVIT OF PROBABLE
                      CAUSE."  THE AFFIDAVIT REQUIRED A
                      DECL[A]RATION OF ANY EXIGENT
                      CIRCUMSTANCES WHICH IS WARRANTED

|  |  |
|---|---|
|  | WHEN EMPLOYING A CONCUSSION DEVICE, FLASH BANG DEVICE, ESPECIALLY ON A KNOCK AND ANNOUNCE WARRANT. |
| Ground Four: | EXCESSIVE SENTENCE, THE TRIAL COURT SENTENCED TO AN EXTENDED TERM AND IMPROPERLY BALANCED AGGRAVATING, MITIGATING FACTORS. |
| Supporting facts: | ON APRIL 7, 2006, PETITIONER WAS SENTENCED TO AN EXTENDED TERM OF 15 YEARS WITH A MANDATORY 5 YEAR PAROLE INELIGIBILITY.  JUDGE NATALE, WHEN SENTENCING THE PETITIONER[,] GRANTED THE MOTION BY THE PROSECUTOR FOR THE EXTENDED TERM.  HOWEVER, JUDGE NATALE DID NOT PROPERLY BALANCE THE AGGRAVATING AND MITIGATING FACTORS. |

Docket Entry No. 1, at 5-10.

### B. Underlying Facts and State Courts' Determinations

In December 2003, a police investigation into cocaine sales disclosed that the drug could be purchased from Petitioner at his apartment. On January 9, 2004, police officers applied to the Superior Court for a search warrant for Petitioner's apartment. Their affidavit included a detailed description of two illegal drug transactions.  The court issued the warrant.  Among other things, the warrant specified that the place to be searched was Petitioner's apartment and the property to be seized included any evidence suggesting the possession or sale of drugs.  The warrant disapproved the execution of the warrant without police first knocking and announcing their presence and purpose.

On January 16, 2004, at approximately 6:30 a.m., thirteen police officers converged on Petitioner's apartment to execute

the warrant.  The officers knocked and announced their purpose, but received no response.  After a twenty-to-thirty-second interval, the officers forcibly gained entry, deployed a flash bang device, searched the apartment, and seized drugs, cash, a paper ledger and a scale.  Petitioner, who was present, was arrested.

A grand jury indicted Petitioner on multiple counts of cocaine distribution and possession.  As Petitioner moved to suppress the fruits of the search, he advanced two arguments: (a) he asserted that there was insufficient probable cause to support the issuance of the search warrant because some of the statements contained in the affidavit in support of the warrant were, allegedly, false;[2] and (b) he argued that police had failed to knock and announce their presence when executing the search warrant.

In opposition to this latter argument, the State produced, as a witness, the detective who had knocked and announced the officers' presence prior to their entry into the apartment.  The detective testified that after waiting twenty or thirty seconds, the door was forcibly breached and the officers deployed a "distraction device" or "flash bang" inside the doorway.  The

---

[2] The trial court canvassed the contents of the affidavit and concluded that there was probable cause to believe that a controlled dangerous substance was being sold from Petitioner's apartment and therefore the issuance of the warrant was proper.

detective explained that the purpose of the "flash bang" device was to surprise the occupants of the dwelling to permit the officers to get through the doorway safely.  In response to questioning, the detective admitted that the device is not primarily used in executing search warrants.  When the detective was asked why the device was used this time, his explanation was interrupted by defense counsel's objection.  Agreeing that the detective's explanation was "beyond the point of anything," the trial court sustained the objection.  After finding the detective credible and determining that the officers had properly knocked and announced, the court denied Petitioner's motion to suppress.

After a jury convicted Petitioner on all counts, he appealed.  He again argued that the warrant was not supported by probable cause and, for the first time, he argued that even if the warrant was validly issued, the manner of execution of the warrant – by the use of a "flash bang" device – was unreasonable. The Appellate Division affirmed the trial court's ruling on probable cause.  <u>See</u> <u>State v. Robinson</u>, 399 N.J. Super. 400 (N.J. Super. App. Div. 2008).

However, with regard to the amount of time between the knock and announce and the forced entry, the state appellate panel concluded that – because the police arrived at 6:30 a.m. and it might take more than thirty seconds to wake up, dress, and walk to the door – "waiting just twenty to thirty seconds before

forcibly breaking down the door of a residence renders the search facially unreasonable, and practically nullifies the knock-and-announce condition specifically imposed by the court." The panel then turned to Petitioner's argument relating to the use of the "flash bang" device and concluded that, "absent unforeseen exigent circumstances supporting the use of force, the use of a flash bang device in connection with the execution of a 'knock-and-announce' warrant, nullifies the legal efficacy of such warrant, rendering the entry and search of the dwelling unconstitutional, in violation of a defendant's rights under Article I, paragraph 7 of the Constitution of the State of New Jersey."

After the panel reversed Petitioner's conviction and remanded for new trial, the State appealed.  The Supreme Court granted the State's petition for certification, see State v. Robinson, 197 N.J. 259 (2008), and reversed the decision reached by the panel, reasoning that: (a) "[a]n objective application of the relevant factors placed in context . . . requires that we reject the Appellate Division's conclusion that the twenty-to-thirty-second delay between the police officers knocking and announcing their purpose and their forcible entry into defendant's apartment was constitutionally insufficient.  The totality of the circumstances presented – including, most significantly, the potential for the destruction of evidence

9

while entry was delayed further – requires that we find there is sufficient credible evidence in the record to support the trial court's conclusion that the twenty-to-thirty-second delay between . . . knocking and announcing 'Police department; search warrant' and the forcible entry was reasonable"; and (b) Petitioner's "claim of unreasonableness in respect of the use of a 'flash bang' device [merits no relief because the] factual shortcoming in this record is . . . largely [Petitioner's] own making: when the State sought to explore the whys and wherefores of using the 'flash bang' device, [Petitioner] objected based on the assertion that the testimony was irrelevant . . . [and, m]oreover, . . . it cannot be said that the trial court's failure to suppress the evidence obtained through the police's use of a 'flash bang' device constituted trial error 'of such a nature as to have been clearly capable of producing an unjust result.'"  State v. Robinson, 200 N.J. 1, 18-21 (2009).

### III. DISCUSSION

#### A. Grounds One, Two and Three

Petitioner's Grounds One, Two and Three paraphrase, in three different ways, the very same substantive challenge, *i.e.*, they assert that Petitioner's trial court erroneously admitted the evidence obtained as a result of the search that took place right after a 'flash bang' device was deployed.  The sole measurable distinction between these three Grounds is that Ground One relies

10

on the New Jersey Constitution, Ground Three relies on the United States Constitution, and Ground Two does not assert any legal basis.

Since Petitioner's Ground Three already presents this challenge in terms of federal law, this Court need not conduct any analysis determining whether Petitioner's reliance on state law (or the state courts' discussions of the issues raised by Petitioner during his appeal) so implicated federal provisions as to have these federal provisions "read" into Petitioner's state-law-based and no-law-based challenges.  In other words, whatever federal aspects could have been distilled from Petitioner's Grounds One and Two, these aspects are already presented – and with abundance – in Petitioner's Ground Three that expressly implicated the Fourth Amendment.  All non-federal-law-based aspects of Petitioner's Grounds One are subject to dismissal because "[f]ederal courts . . . may intervene only to correct wrongs of [federal] constitutional dimension," Smith, 455 U.S. at 221, and "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle, 456 U.S. at 120 n.19, because "errors of state law cannot be repackaged as federal errors."  Johnson, 117 F.3d at 110; see also, Smith, 120 F.3d at 414; Smith, 768 F.2d at 71-73.  All unarticulated aspects of Petitioner's Ground Two need not be considered by this Court,

11

since "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).[3]

The Court, therefore, turns to Petitioner's Ground Three (and, consequently, to the incorporated within that Ground federal aspects, if any, of Petitioner's Grounds One and Two).

The Fourth Amendment to the U.S. Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, see Mapp v. Ohio, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

Generally, evidence gained through a Fourth Amendment violation may not be used against a defendant at trial. See Mapp, 367 U.S. at 654-55; Weeks v. United States, 232 U.S. 383, 391-93 (1914). This "exclusionary rule" is a judicially-created remedy to safeguard Fourth Amendment rights by deterring police

---

[3] The Habeas Rules require a petition to specify the judgment being challenged, *specify the federal grounds for relief available to the petitioner*, state the facts supporting each ground, state the relief requested, be typewritten or legibly handwritten, be signed under penalty of perjury by the petitioner or an authorized person, and to substantially follow the form appended to the rules. See 28 U.S.C. § 2254 Rule 2(c) & (d); see also Mayle v. Felix, 545 U.S. 644, 655 (2005).

conduct that violates those rights.  See Stone v. Powell, 428 U.S. 465, 486 (1976).

In Stone, the Supreme Court examined the nature of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its utility as a deterrent against the risk of excluding trustworthy evidence and thus "deflect[ing] the truthfinding process."  Id. at 482, 490.  Finding that, as to collateral review, the costs of the exclusionary rule outweighed the benefits of its application, the Court concluded that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494, 96 S.Ct. 3037.

Thus, while the federal courts are not deprived of jurisdiction to hear the claim, they are – for prudential reasons – restricted in their application of the exclusionary rule.  See id. at 494 n. 37; see also Marshall v. Hendricks, 307 F.3d 36, 81-82 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003).  "Whether the petitioner actually took advantage of the opportunity is irrelevant; so long as the opportunity was available, the bar against raising the Fourth Amendment claims on collateral review applies."  Jackson v. DiGuglielmo, 2006 U.S.

Dist. LEXIS 24516, at *6 (E.D. Pa. 2006) (citing Cohen v. Gillis, 2004 U.S. Dist. LEXIS 13904 (E.D. Pa. 2004)).  Moreover, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar."  Gilmore v. Marks, 799 F.2d 51, 57 (3d Cir. 1986).

The Court of Appeals for the Third Circuit has recognized that there may be instances in which a full and fair opportunity to litigate was denied in state court.  See, e.g., Gilmore, 799 F.2d at 57 (observing that a state's "failure to give at least colorable application of the Fourth Amendment constitutional standard" might amount to a denial of the opportunity for full and fair litigation); Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir. 1980) (assuming, without deciding, that the term "opportunity" simply means providing procedures by which one can litigate a Fourth Amendment claim, ad noting that Stone v. Powell does not preclude federal habeas relief when "'the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process'") (quoting Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977), cert. denied, 434 U.S. 1038 (1978))).

The case at bar does not present one of those instances in which a full and fair opportunity to litigate was denied in state court.  Here, Petitioner was able to raise his challenges to the search during pre-trial motion and pursue these claims on appeal; moreover, decisions issued by the state courts unambiguously show

that the state courts gave more than a "colorable" application of the Fourth Amendment standard to Petitioner's claims.[4]

Accordingly, Petitioner is not entitled to federal habeas relief with respect to his Fourth Amendment claims. For this reason, Petitioner's Ground Three (and those aspects, if any, of his Grounds One and Two that implicated the Fourth Amendment) will be dismissed.

**B.    Ground Four**

In addition to his thrice-paraphrased Fourth Amendment challenge, Petitioner also asserts that his sentence was excessive.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See Pringle v. Court of Common Pleas,

---

[4] As the Supreme Court of New Jersey noted, any limitations on factual exploration of the issue were of Petitioner's own making, resulting from Petitioner's objections to testimony as to what were the particular circumstances that prompted the officers to conclude that the flash device had to be used after 30 seconds of waiting for Petitioner to answer the door.

744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991).

Here, Petitioner does not assert any violation of a separate federal constitutional limitation and, on this basis, his Ground Four shall be dismissed. Moreover, even if the Court were to hypothesize that Petitioner meant to assert a violation of the Eighth Amendment, his Ground Four does not merit relief.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted). The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). However, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review – "the primacy of the legislature, the variety of legitimate

16

penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors" – that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001 (citation omitted) (quoted with approval in Ewing, 538 U.S. at 23).

> Here,
>
> [the] jury convicted [Petitioner] of one count of third-degree possession of cocaine, N.J. [Stat. Ann. §] 2C:35-10a(1), two counts of third-degree possession of cocaine with intent to distribute, N.J. [Stat. Ann. §] 2C:35-5b(3), and second-degree possession of cocaine with intent to distribute within 500 feet of a public housing complex, N.J. [Stat. Ann. §] 2C:35-7.1. The court sentenced [Petitioner] to an extended term of fifteen years imprisonment with five years of parole ineligibility . . . .

State v. Robinson, 399 N.J. Super. at 403.[5]

Petitioner's sentence cannot be qualified as so grossly disproportionate to the crimes of which he was convicted to violate the safeguards of the Eighth Amendment. Extended sentences are common in the State of New Jersey and other states, they are not contrary to legitimate penological schemes, and are frequently applied to individuals convicted of drug-related

---

[5] Prior to that conviction, Petitioner had been convicted for the offense of criminal restraint with risk of serious bodily injury to his victim; during his currently served imprisonment, Petitioner was convicted on different controlled substance charges. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1055416&n=10>>.

offenses.  Moreover, Petitioner's sentence, <u>i.e.</u>, five years of parole ineligibility (with fifteen years maximum imprisonment), cannot qualify as an extreme penalty for Petitioner's offenses.[6] Therefore, even if the Court were to read an Eighth Amendment argument into Petitioner's Ground Four, it would not state a violation of federal constitutional limitations.

Consequently, Petitioner's Ground Four is not be reviewable in a federal habeas proceeding, <u>see</u> <u>Pringle</u>, 744 F.2d at 300, and Petitioner's Ground Four will be dismissed.

    C.    **<u>Certificate of Appealability</u>**

The Court must now determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.

The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "[A] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, the Court is persuaded that jurists of reason would not disagree with this Court's conclusions.

---

[6] Petitioner's currently projected parole eligibility date is August 16, 2012.

Therefore, no certificate of appealability will issue.

**V.   CONCLUSION**

For the foregoing reasons, this Court dismisses the Petition and denies Petitioner a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

No certificate of appealability will issue, pursuant to 28 U.S.C. § 2253(c)(2).

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
United States District Judge

Dated: June 27, 2011

19